**FILED**

DEC 0 5 2005

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DISTRICT OF COLUMBIA

GOLETA VALLEY COMMUNITY )
HOSPITAL A/K/A GOLETA VALLEY )
COTTAGE HOSPITAL, 351 S. Patterson )
Avenue, Santa Barbara, CA 93111 )
)
Plaintiff, )
)
vs. )
)
MIKE LEAVITT, in his official capacity )
as Secretary of the UNITED STATES )
DEPARTMENT OF HEALTH AND )
HUMAN SERVICES, 200 Independence )
Avenue, S.W., Washington, D.C. 20201 )
)
Defendant. )

CASE NUMBER  1:05CV02323

JUDGE: Reggie B. Walton

DECK TYPE: Administrative Agency Rev.

DATE STAMP: 12/05/2005

**COMPLAINT FOR JUDICIAL REVIEW
OF FINAL ADVERSE AGENCY ACTION**

The plaintiff, Goleta Valley Community Hospital, a/k/a Goleta Valley Cottage Hospital

("Goleta Valley"), seeks judicial review of a decision by the Administrator of the Centers for

Medicare and Medicaid Services ("CMS") (formerly the Health Care Financing Administration)

that (i) vacated the decision of the Provider Reimbursement Review Board (the "Board") that

Goleta Valley is entitled to a new provider exemption from the Medicare routine cost limits for

Goleta Valley's skilled nursing facility and (ii) remanded the Board's consolidated cases (Case

Nos. 97-1198, 99-0246, and 99-0247) to CMS for a determination of Goleta Valley's request for

a "new provider exemption" from Medicare's routine cost limits for its skilled nursing facility.

Goleta Valley brings this action because the Administrator's decision to vacate the Board's

decision that Goleta Valley was entitled to a new provider exemption to the Medicare routine

cost limits for its skilled nursing facility and to remand that issue back to CMS for determination

was arbitrary, capricious, an abuse of discretion, otherwise not in accordance with the law,

*1*

unsupported by substantial evidence, and an unlawful withholding and unreasonable delay of agency action. Goleta Valley seeks an order (i) reversing the Administrator's decision, (ii) reinstating the Board's decision in these consolidated cases in its entirety, (iii) declaring that Goleta Valley is entitled to a new provider exemption from the skilled nursing facility routine cost limits for its Medicare cost reporting periods ending September 30, 1995, September 30, 1996, and December 31, 1996, (iv) directing CMS to utilize the new provider exception to the routine cost limits in calculating the reimbursement that was due to Goleta Valley for its skilled nursing facility costs for the Medicare cost reporting periods at issue, (v) ordering CMS to pay interest on the entire amount in controversy, (vi) ordering CMS to pay Goleta Valley's costs and attorneys fees, and (vii) providing any other relief to which Goleta Valley is entitled.

## PARTIES

1.    Goleta Valley is a general, short term, acute care hospital facility located in Santa Barbara, California. Goleta Valley is a California non-profit corporation with its principal place of business at 351 S. Patterson Ave., Santa Barbara, CA 93111

2.    Defendant Mike Leavitt (the "Secretary") is the Secretary of the United States Department of Health and Human Services ("HHS"), and in that capacity is responsible for HHS functions, including the operation of the medical insurance program established by Congress in Title XVIII of the Social Security Act, as amended, 42 U.S.C. §§1395, et seq. (the "Medicare Program"). The Secretary has delegated responsibility for the administration of the Medicare Program to CMS and its Administrator. Pursuant to Fed. R. Civ. P. 4(i)(1), (2) the Defendant may be served by sending a copy of the summons and the complaint by certified mail, return receipt requested, to the Defendant and the Attorney General of the United States of America.

## JURISDICTION AND VENUE

3.    This Court has jurisdiction over this action pursuant to 42 U.S.C. §1395oo (f) and 28 U.S.C. §1331.

4.    Venue lies in this district pursuant to 42 U.S.C. §1395oo (f) (1).

## BACKGROUND

### Summary of the Dispute and Issues

5.    From 1988 through 1998, Goleta Valley operated a Respite Guest Weekend Program (the "Respite Program"), and later in 1994, Goleta Valley opened a new, separate and unrelated skilled nursing facility.

6.    Medicare provides for a new provider exemption from Medicare's routine cost limits for calculation of Medicare reimbursement for costs associated with skilled nursing facilities that have been Medicare-certified less than three years. In 1997, Goleta Valley's skilled nursing facility met the definition of a new provider, so Goleta Valley filed a request for this new provider exemption with its Medicare fiscal intermediary (the "Intermediary") and CMS.

7.    Goleta Valley also timely and properly appealed adjustments that its Intermediary made to Goleta Valley's Medicare cost reports for periods ended 9/30/95, 9/30/96 and 12/31/96 in which the Intermediary applied the routine cost limits to the costs for Goleta Valley's new skilled nursing facility. Those adjustments were reflected in a Notices of Program Reimbursement ("NPR") issued for each applicable cost reporting period, which constituted final determinations by CMS and the Intermediary.

8.    In considering Goleta Valley's exemption request, the Intermediary and CMS were concerned that Goleta Valley's Respite Program was a skilled nursing facility or the equivalent, which would preclude the exemption.

9.    After months of correspondence between Goleta Valley, the Intermediary, and CMS, and Goleta Valley's production on several occasions of additional information for the exemption application as requested by CMS and the Intermediary (particularly regarding the Respite Program), CMS notified the Intermediary and Goleta Valley that it was denying Goleta Valley's request for an exemption as a new provider from the routine cost limits for its skilled nursing facility. This denial was also a final determination by CMS and the Intermediary.

10.   Goleta Valley timely filed appeals with the Board regarding these final determinations of CMS and the Intermediary.   The Board accepted Goleta Valley's appeals and consolidated the appeals to be heard at one time in a single hearing on the record.   In preparation for the Board hearing on the record, legal counsel for Goleta Valley and for the Intermediary/CMS stipulated that there were two separate issues to be considered by the Board in the consolidated cases.  The first threshold issue was whether Goleta Valley had provided sufficient information to enable CMS to make a decision on Goleta Valley's request for a new provider exemption to Medicare's routine cost limits for its new skilled nursing facility.   Assuming that first threshold issue was decided in favor of Goleta Valley, the second issue to be decided was whether Goleta Valley was entitled to a new provider exemption to the reasonable cost limits for its skilled nursing facility for the cost reporting periods at issue.

11.   The Board decided in favor of Goleta Valley with regard to the first issue and determined that Goleta Valley did provide sufficient documentation.   Consequently, the Board addressed the second issue and decided that Goleta Valley was entitled to a new provider exemption from Medicare's routine cost limits for its new skilled nursing facility.

12.   The Administrator of CMS (the "Administrator") then reviewed the Board's decision in these consolidated cases and found that Goleta Valley had indeed met the documentation requirements for the exemption request.  However, the Administrator vacated the Board's decision as to the merits of Goleta Valley's routine cost limit exemption request and remanded the cases back to CMS for a determination on Goleta Valley's application for an exemption to the skilled nursing facility routine cost limits.

13.   Goleta Valley disagrees and files this complaint for judicial review of the Administrator's decision.  The following additional background information provides more detail regarding these consolidated cases and this dispute.

### The Federal Regulatory Scheme

14.   Congress established the Medicare Program to ensure that the aged and disabled would have access to health care services.  See 42 U.S.C. §§ 1395, et seq.  Under the Medicare Program, CMS, acting under the authority of the Secretary, reimburses qualifying health

-4-

care providers for reasonable costs they incur in treating Medicare patients.  42 U.S.C. §§ 1395cc, 1395g, 1395x(v)(1)(A).

15.   Providers that qualify for reimbursement from the Medicare Program include skilled nursing facilities.  Congress has defined a "skilled nursing facility" to be an institution, or a distinct part of an institution, that is:

>     primarily engaged in providing to residents—
>
>     (A)   skilled nursing care and related services for residents who require medical or nursing care, or
>
>     (B)   rehabilitation services for the rehabilitation of injured, disabled, or sick persons...

42 U.S.C. § 1395i-3(a) (emphasis added).

16.   "Fiscal intermediaries" (typically private insurance companies) serve as claims managers for the Medicare Program at the local level pursuant to contracts between the fiscal intermediaries and CMS.  42 U.S.C. § 1395h.  Ordinarily, a fiscal intermediary approves reimbursement monthly for each of the providers it manages, based on bills that each provider submits.  At the close of each cost reporting period (usually a fiscal year of the provider), each provider submits a comprehensive cost report and the fiscal intermediary then audits each provider's report to determine the final amount of Medicare reimbursement due to the provider. 42 U.S.C. § 0959g.

17.   Section 1861(v)(1)(A) of the Social Security Act, 42 U.S.C. § 1395x(v)(1)(A), authorizes the Secretary to establish limits, known as "routine cost limits," on operating costs that may be reimbursed to providers such as skilled nursing facilities.  The Secretary has delegated this authority to CMS.  42 C.F.R. § 413.30.  Routine cost limits are determined on a per admission, per discharge, per diem, per visit or other basis.

18.   The Secretary's Medicare Program regulations permit various forms of adjustment to the routine cost limits.  Under the regulations in place at the time relevant to this case, a skilled nursing facility that met certain criteria was deemed a "new provider," and thus was eligible for an exemption from the routine cost limits.  42 C.F.R. § 413.30(e)

(1997).[1]  Section 413.30(e) defined a "new provider" as "a provider of inpatient services that has operated as the type of provider (or the equivalent) for which it is certified for Medicare, under present and previous ownership, for less than three full years."  Id.  A new provider exemption entitles a skilled nursing facility to reimbursement from Medicare for all of its actual nursing service costs, without the cap imposed by the routine costs limits.  Section 413.30(e) also provided that the exemption "expires at the end of the provider's first cost reporting period beginning at least two years after the provider accepts its first patient."  Id.

19.    CMS publishes a Provider Reimbursement Manual, CMS Pub. 15 (the "Manual"), which contains guidelines interpreting Medicare Program regulations.  Section 2604.1 of the Manual, which discussed the new provider exemption and was in effect during the period pertinent to this case, stated:

> A new provider is an institution that has operated in the manner for which it is certified in the program (or the equivalent thereof) under present and previous ownership for less than three full years.  For example, an institution that has been furnishing only custodial care to patients for two full years prior to its becoming certified as a hospital furnishing covered services to Medicare beneficiaries, shall be considered a "new provider" for three full years from the effective date of its certification.  However, if an institution has been furnishing hospital health care for two full years prior to its certification, it shall only be considered a "new provider" in its third full year of operation, which is its first full year of participation in the program.

### Goleta Valley's Establishment of Respite Program

20.    In 1988, Goleta Valley established its Respite Program to offer respite, or a period of rest, to caregivers while providing a weekend away for those persons needing twenty-four hour supervision.  The Respite Program was developed in consultation with the California Department of Health Services.  However, there was no requirement by the California Department of Health Services to conform to skilled nursing facility licensing requirements when the program was initiated.  Two weekends per month, frail elderly or disabled clients spent Friday evening to Sunday evening as a guest in the Respite Program, which was operated as an out-of-home respite service.  Twenty-four hour

---

[1]  The new provider exemption regulation now appears at 42 C.F.R. § 413.30(d).

supervision was provided by respite staff in a safe and caring environment, and at a lower hourly cost than in-home care. In sum, the Respite Program enabled older adults and functionally impaired adults to remain in their home environments, delaying or avoiding institutionalization.

21. Services provided by the Respite Program included (i) nutritional services, including feeding tubes, if necessary, and (ii) twenty-four hour care, including assistance, as needed bathing, dressing, taking medication, and treatments ordered by the guest's physician.

22. Goleta Valley closed the Respite Program at the end of 1998.

### Goleta Valley's Establishment of its Skilled Nursing Facility

23. Goleta Valley subsequently opened and operated a hospital-based skilled nursing facility, which was licensed by the California Department of Health Services on November 14, 1994, and became Medicare certified on December 7, 1994.

24. 42 C.F.R. §413.30(e) provides for an exemption from the routine cost limits for skilled nursing facilities for "new providers." A new provider is a provider of inpatient services that has operated as the type of provider (or the equivalent) for which it is certified for Medicare, under present and previous ownership, for less than three full years.

25. Goleta Valley's skilled nursing facility met the definition of new provider because its skilled nursing facility had operated as a Medicare-certified skilled nursing facility for less than three years. Therefore, Goleta Valley requested the new provider exemption from the routine cost limits for its new skilled nursing facility.

### Goleta Valley's Request for New Provider Exemption to Routine Cost Limit

26. In March 1995, Goleta Valley began the process of requesting a new provider exemption to the routine cost limits for its new skilled nursing facility.

27. On February 25, 1997, Goleta Valley submitted a completed skilled nursing facility exemption request to the Intermediary. The Intermediary then forwarded Goleta Valley's request to CMS pursuant to 42 C.F.R. § 413.30(c).

28. On March 21, 1997, the Intermediary sent Goleta Valley a letter requesting additional information in light of "new instructions" from CMS.

29.    On April 4, 1997, Goleta Valley responded to the Intermediary's request by providing each of the items requested by the Intermediary.

30.    On July 10, 1997, the Intermediary sent a letter to Goleta Valley again asking for additional information. The Intermediary requested that Goleta Valley, "[p]lease explain exactly what services are provided and what costs are booked in the non-reimbursable cost center for "Respite & Others" reported on Worksheet A, for FYE 9/30/92 and 9/30/93. Also provide documentation supporting your response."

31.    Goleta Valley responded to the Intermediary's request by sending a packet which provided the requested supporting documentation related the Respite Program. As part of the documentation, Goleta Valley sent a brochure which gave an overview of the Respite Program and contained information on the following topics: (1) the types of assistance the nursing staff could provide such as bathing, dressing, and taking medication; (2) the social and recreational activities in which the guests could participate; (3) information on the nutritional value of the meals served and its commitment to meeting individual dietary concerns; and (4) personal testimonials from family members who felt the Respite Program helped them and their loved ones. Also included in this correspondence, was a one page description of the Respite Program explaining its purposes, the cost, and the different services available. Lastly, Goleta Valley included a calendar showing available weekends for the Respite Program.

32.    On September 29, 1997, CMS sent a letter to the Intermediary requesting that Goleta Valley submit an "exact list of the medical services provided during the respite program." In this letter, CMS cites 42 C.F.R. §409.33(b) and (c) and states it wants to determine whether the services provided by the Respite Program are equivalent to those provided by a skilled nursing facility. This letter also stated that until such list was submitted by Goleta Valley, CMS would be unable to determine whether or not Goleta Valley qualified for the new provider exemption to the routine cost limits for its skilled nursing facility.

33.    The Intermediary did not inform Goleta Valley of the September 29, 1997 correspondence from CMS until November 14, 1997, when it sent a letter to Goleta

Valley stating that CMS had requested an exact list of the medical services provided during the Respite Program.

34.    On August 5, 1998, a representative of Goleta Valley had a telephone conference with Julie Stankivic, the CMS representative who was reviewing Goleta Valley's request for a new provider exemption. As a result of this discussion and Ms. Stankivic's request for further information, on the same day Goleta Valley sent CMS a portion of the position paper prepared by Goleta Valley for its case pending before the Board in which Goleta Valley was appealing the Intermediary's adjustments applying the routine cost limits to Goleta Valley's skilled nursing facility costs. That position paper distinguished the purposes of and the services available at the Respite Program from purposes of and the services available at a skilled nursing facility. Specifically, the position paper outlined 12 ways in which the services provided by a licensed skilled nursing facility are different from the services provided by the Respite Program. In the letter, Goleta Valley stated that hopefully this additional information would enable CMS to make a determination as to whether or not Goleta Valley qualified for the new provider exemption to the routine cost limits. A copy of the information that Goleta Valley sent to CMS was also sent to the Intermediary.

35.    On August 17, 1998, the Intermediary sent a letter to Goleta Valley acknowledging that it had received the additional information provided in the August 5, 1998 letter.

36.    On October 30, 1998, eighteen months after Goleta Valley submitted a completed request for a new provider exemption to the routine cost limits for its skilled nursing facility, and after a voluminous exchange of information between Goleta Valley, the Intermediary and CMS in which Goleta Valley provided the additional information that was requested, the Intermediary forwarded to Goleta Valley an October 16, 1998 letter from CMS to the Intermediary, which stated that CMS had denied Goleta Valley's request for a new provider exemption due to lack of documentation.

37.    This denial of the new provider exemption was a final determination by CMS and the Intermediary.

**Goleta Valley's Medicare Cost Reports and Intermediary's Audit Adjustments**

38.    During the cost reporting periods at issue for Goleta Valley's skilled nursing facility exception from the routine cost limits (i.e., Goleta Valley's fiscal years ending 9/30/95 and 9/30/96 and the partial fiscal year ending 12/31/96), Goleta Valley filed its Medicare cost reports properly identifying all the costs associated with its new skilled nursing facility. However, in auditing and settling such Medicare cost reports, the Intermediary made audit adjustments to each of those cost reports in which the Intermediary applied the routine cost limits to the reimbursable costs of Goleta Valley's new skilled nursing facility. In doing so, the Intermediary was essentially holding that Goleta Valley was not entitled to the new provider exemption. Those audit adjustments were reflected in the audit adjustment report for the Notice for Program Reimbursement ("NPR") that Goleta Valley received from the Intermediary for each of the applicable cost reporting periods.

39.    The NPR is the Intermediary's and CMS' final determination of the amount of Medicare reimbursement due to a provider for the cost reporting period covered by such cost report and the NPR. Pursuant to 42 C.F.R. §1395oo(a)(1)(A), if a provider is dissatisfied with the final determination of its fiscal intermediary as to the amount of total program reimbursement due the provider, it can appeal such final determination to the Board.

**Goleta Valley's Appeals to the Board**

40.    Goleta Valley timely requested a hearing before the Board to appeal the audit adjustments in the NPRs for cost reporting periods ending 9/30/95, 9/30/96, and 12/31/96 in which the Intermediary applied the routine cost limits to the reimbursable costs of Goleta Valley's new skilled nursing facility. The Board assigned Case Nos. 97-1198, 99-0246, and 99-0247 to those respective hearing requests.

41.    Goleta Valley also filed a request for hearing with the Board on December 23, 1997 regarding CMS' denial of Goleta Valley's request for an exception to the routine cost limits for its new skilled nursing facility. The Board assigned Case No. 98-0543 to that appeal, and later the Board transferred the documents relating to Case No. 98-0543 to Case No. 97-1198, and closed Case No. 98-0543, thereby in essence consolidating those cases in Case No. 97-1198.

42. With respect to Case No. 97-1198, the Intermediary initially challenged jurisdiction with respect to that case, but after receipt of jurisdictional briefs from Goleta Valley and the Intermediary, the Board determined that it had jurisdiction to hear the case.

43. Thereafter, for each of the pending cases, Goleta Valley timely submitted preliminary and final position papers to the Intermediary and Board, as required, in order to set forth Goleta Valley's position with respect to the substantive issues in those cases (i.e., whether Goleta Valley had submitted sufficient information in its application for the new provider exemption from the routine cost limits for CMS to make its determination, whether Goleta Valley should be entitled to a new provider exemption from the routine cost limits for its skilled nursing facility, and whether the Intermediary's audit adjustments applying the routine cost limits to the costs associated with its new skilled nursing facility were correct). Notably, the Intermediary did not timely submit, as required, a preliminary position paper in these cases to Goleta Valley or the Board, thereby forcing Goleta Valley to prepare its final position papers without the opportunity to know or address the Intermediary's arguments and position in these matters.

### The Board's Consideration of Goleta Valley's Cases

44. Ultimately, the parties in these three pending cases (Case Nos. 97-1198, 99-0246, and 99-0247) agreed that the issues were essentially the same in each case, and the Board agreed to address all three cases at the same hearing.

45. Before the scheduled hearing date, the parties (with the Board's concurrence) agreed that the Board would conduct the hearing of the consolidated cases on the record by review and consideration of the documents submitted by the parties into the record.

46. In preparation for the record hearing, on November 22, 2004 legal counsel for Goleta Valley and the Intermediary/CMS filed mutually agreed upon stipulations of the issues the Board was to consider in conducting the review of the record. The agreed stipulations stated there were two issues in dispute in the consolidated cases to be decided by the Board. The first issue was whether Goleta Valley provided enough information to the Intermediary to enable the Intermediary and CMS to make determinations as to whether to grant Goleta Valley a new provider exemption to the Medicare's routine cost limits for its skilled nursing facility, under the regulatory provision at 42 C.F.R. 413.30(e).

-11-

Provided the first issue was decided favorable to Goleta Valley, the second issue was whether Goleta Valley was entitled to the new provider exemption from the skilled nursing facility routine cost limits.

47.    On August 12, 2005, eight years after the Board accepted Goleta Valley's first request for a hearing on these matters, the Board rendered PRRB Dec. No. 2005-D53 addressing Case Nos. 91-1198, 99-0246, and 99-0247.

48.    With regard to the first issue of whether Goleta Valley provided sufficient information to show that it was entitled to the new provider exemption to routine cost limits for skilled nursing facilities, the Board decided in favor of Goleta Valley stating that Goleta Valley did supply sufficient documentation to CMS and the Intermediary. Specifically, the Board stated, "[t]he issue in this case is a matter of determining whether or not the Provider [Goleta Valley] furnished sufficient information to show that it did not operate as a SNF [skilled nursing facility] or the equivalent through the services furnished by its respite program. Except for this issue, there is no argument that the Provider's hospital-based SNF qualifies as a 'new provider' and should be exempt from Medicare's routine service cost limits." In connection with the specific amount of information supplied by Goleta Valley, the Board noted that, "with respect to the instant case, the Board finds that a complete 'listing' of the medical services furnished by the Provider's respite program was unnecessary in light of the information the Provider had made available. CMS had all the information needed to determine that the Provider had not operated as a SNF or the equivalent through its respite program services."

49.    Because the Board decided the first threshold issue in favor of Goleta Valley, it also addressed the second issue of whether Goleta Valley was entitled to a new provider exemption from Medicare routine cost limits for its skilled nursing facility.

50.    With regard to the second issue, the Board decided that Goleta Valley was entitled to the new provider exemption to Medicare's routine cost limits for its skilled nursing facility. The critical element with regard to the second issue was whether or not Goleta Valley was already operating a skilled nursing facility or the equivalent through the services furnished by its Respite Program. In the decision, the Board explains its analysis as follows:

-12-

Upon review of the pertinent regulations and the Provider's [Goleta Valley's] documentation, the Board finds that the Provider's respite program did not operate as a SNF or the equivalent and that CMS' denial of the Provider's request was improper. 42 C.F.R. §413.30 explains that a new provider is a 'provider of inpatient services...' The Provider's documentation clearly shows that the respite program did not serve individuals who required/or who were receiving inpatient care. Rather, the respite program provided services to individuals who were receiving home care. The Provider's brochure, its descriptive literature apparently available to the public, and the calendar of available dates for respite services, show that the respite program was established to provide relief to people who were providing care to individuals in their homes. The respite program was available only two weekends a month which, as a health service, can not be construed to meet the needs of individuals actually requiring inpatient services.

The Board acknowledges that some skilled services may have been furnished through the respite program. As the Provider's documentation explains weekend guests may receive assistance with feeding tubes and treatments ordered by physicians. However, this type of intermittent care does not represent a reasonable standard upon which to characterize a facility as a SNF or the equivalent. Pursuant to 42 U.S.C. §1395i-3(a), a facility must be 'primarily engaged' in providing skilled nursing care for residents in order to be recognized as a SNF.

51.    Pursuant to 42 C.F.R. §1395oo(d) the Board, "shall have the power to affirm, modify, or reverse a final determination of the fiscal intermediary with respect to a cost report and to *make any other revisions on matters covered by such cost report (including revisions adverse to the provider of services) even though such matters were not considered by the intermediary in making such final determination."* (emphasis added). As a result, the Board was acting within its authority to consider and make a decision regarding the second issue even if the parties had not stipulated the second issue because the issue of the new provider exemption was raised by the cost reports submitted by Goleta Valley.

## CMS Administrator's Review of the Board's Decision

52.    Pursuant to 42 C.F.R. §405.1875, the Administrator, at his or her discretion, may review any final decision of the Board. If the Administrator has notified the parties and CMS that he or she has decided to review the Board decision, the Administrator will affirm, reverse, modify, or remand the case.

-13-

53.     The Administrator chose to review PRRB Dec. No. 2005-D53, and rendered a decision dated October 6, 2005.

54.     With regard to the first issue, the Administrator agreed with and upheld the Board's decision that Goleta Valley met the documentation requirements to enable CMS to make a determination on the merits of Goleta Valley's request for a new provider exemption. The Administrator notes that, "as required, the Provider [Goleta Valley] included a list of the skilled/medical services it performed and the dates of first performance. The Provider also submitted other documents describing the respite care program as a form of furnishing relief to in-home caregivers, on two weekends per month, by furnishing housing and limited care to the guests."

55.     With regard to the second issue addressed in the Board decision, the Administrator vacated the Board's decision on the merits of Goleta Valley's request for a new provider exemption to the routine cost limits for its skilled nursing facility, and remanded this issue to CMS for a determination on the merits. The Administrator held that "the record reflects that the Board erroneously took the place of CMS as the decision-maker on the merits, and ruled that the Provider's [Goleta Valley's] documentation warranted a new provider exemption. However, since CMS had not rendered a final determination on the merits of the Provider's request, the Board was without authority to rule on such matters."

## COUNT 1

56.     Goleta Valley repeats and reasserts the allegations in paragraphs 1 through 55 as if set forth fully herein.

57.     Goleta Valley's skilled nursing facility became Medicare-certified in December 1994. Before that time, Goleta Valley had not operated a Medicare-certified skilled nursing facility under present or previous ownership for less than three full years. Although, Goleta Valley also operated a Respite Program, the record of the consolidated cases contains overwhelming evidence that this Respite Program was neither a skilled nursing facility nor ever "equivalent" to a skilled nursing facility. Under these circumstances and in light of the entire record of these consolidated cases, Goleta Valley's skilled nursing facility was a "new provider," as that term was defined in 42 C.F.R. §413.30(e), and

-14-

Goleta Valley was entitled to the new provider exemption from the routine cost limits for its skilled nursing facility. Therefore, the Administrator's vacation and remand of the Board's decision on the merits of Goleta Valley's request for a new provider exemption from the routine cost limits was arbitrary, capricious, an abuse of discretion, otherwise not in accordance with law, and unsupported by substantial evidence. In addition, by ordering remand, the Administrator's refusal to permit the Board to review the merits unlawfully withheld and unreasonably delayed agency action.

## COUNT 2

58.  Goleta Valley repeats and reasserts the allegations in paragraphs 1 through 56 as is set forth fully herein.

59.  Goleta Valley requested a new provider exemption from Medicare's routine cost limits for its new skilled nursing facility on February 25, 1997. After eighteen months of correspondence between Goleta Valley, the Intermediary, and CMS, and Goleta Valley's production of additional information requested by CMS, denied Goleta Valley's request for an exemption as a new provider from the routine cost limits due to a lack of sufficient documentation. This denial was a final determination by CMS. Additionally, in the applicable NPRs the Intermediary made adjustments to Goleta Valley's Medicare cost reports for cost reporting periods ended 9/30/95, 9/30/96 and 12/31/96 in which the Intermediary applied the routine cost limits to the reimbursable costs for Goleta Valley's new skilled nursing facility. These NPRs and the audit adjustments therein were final determinations by the Intermediary and CMS. Goleta Valley timely filed with the Board requests for hearings of these final determinations, pursuant to 42 U.S.C. §1395oo(a) and 42 C.F.R. §405.1835. The Board accepted Goleta Valley's hearing requests and consolidated the hearings of these cases in a single record hearing. In preparation for that record hearing, counsel for the Intermediary/CMS and Goleta Valley stipulated that there were two separate issues present in the consolidated cases: (1) whether Goleta Valley had provided sufficient information to the Intermediary and CMS to enable CMS to make a decision on Goleta Valley's request for a new provider exemption from Medicare's routine cost limits for skilled nursing facilities; and (2) whether Goleta Valley was entitled to a new provider exemption from the routine cost limits for its skilled nursing

facility. The parties had agreed and stipulated that if the first issue was decided in favor of Goleta Valley, the Board would address the second issue of whether or not Goleta Valley was entitled to the new provider exemption. The Board did decide in favor of Goleta Valley with regard to the first issue and, consequently, addressed the second issue and decided that based on the record Goleta Valley was entitled to the new provider exemption.

60.    Because CMS rendered two separate final determinations with respect to Goleta Valley's request for a new provider exemption that Goleta Valley timely and properly appealed, the Board was acting within its authority when it decided that, based on the record and the applicable law and regulations, Goleta Valley was entitled to a new provider exemption from the routine cost limits for its skilled nursing facility. In addition, pursuant to 42 C.F.R. §1395oo(d), the Board is able to consider and revise other matters related to a cost report submitted as part of the record, even if such matters were not considered by the fiscal intermediary in making a final determination. Because the Intermediary made audit adjustments to Goleta Valley's Medicare cost reports for the periods at issue, which applied the routine cost limits to Goleta Valley's reimbursable skilled nursing facility costs, and such adjustments materially adversely affected the Medicare reimbursement to which Goleta Valley was entitled, the Board additionally had the authority to consider and revise these matters related to Goleta Valley's Medicare cost report. Because the Board was acting within its authority to rule on such matters, the Administrator's vacation and remand of this part of the Board's decision was arbitrary, capricious, an abuse of discretion, otherwise not in accordance with law, and unsupported by substantial evidence. In addition, by ordering remand, the Administrator's refusal to permit the Board to review the merits unlawfully withheld and unreasonably delayed agency action.

## PRAYER FOR RELIEF

WHEREFORE, Goleta Valley respectfully requests that the Court:

1.    Reverse the Administrator's decision;

2.    Reinstate the Board's decision in its entirety in PRRB Dec. 2005-D53;

3.     Declare that Goleta Valley is entitled to a new provider exemption from the routine cost limits for its skilled nursing facility for its cost reporting periods ending 9/30/95, 9/30/96, and 12/31/96;

4.     Direct CMS to utilize the new provider exception to the routine cost limits in calculating the reimbursement that was due to Goleta Valley for its skilled nursing facility costs for the Medicare cost reporting periods at issue;

5.     Award Goleta Valley costs and interest on the amounts due pursuant to 42 U.S.C. §1395oo(f)(2);

6.     Award Goleta Valley attorney's fees and costs; and

7.     Award Goleta Valley such other relief as the Court deems just and proper.

GOLETA VALLEY COMMUNITY
HOSPITAL a/k/a GOLETA VALLEY
COTTAGE HOSPITAL

Of Counsel:

By its attorney,

**BARRON P. BOGATTO**
**VIRGINIA C. ALVERSON**
**JACKSON WALKER L.L.P.**
1400 McKinney, Suite 1900
Houston, Texas 77010
Telephone: (713) 752-4200
Facsimile: (713) 752-4221

**ALAN B. DAUGHTRY**
Federal District Court Bar No.: TX0029
**JACKSON WALKER L.L.P.**
1400 McKinney, Suite 1900
Houston, Texas 77010
Telephone: (713) 752-4200
Facsimile: (713) 752-4221
adaughtry@jw.com

Date: December 5, 2005