# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

GOLETA VALLEY COMMUNITY       )
    HOSPITAL,                 )
                                    )
                Plaintiff,       )
                                      )
             v.                     )          Civil No. 05-2323 (DAR)
                                      )
MICHAEL O. LEAVITT, Secretary of )
    Health and Human Services,    )
                                      )
               Defendant.        )
_____)

## DEFENDANT'S MOTION TO DISMISS

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Defendant, Michael

O. Leavitt, Secretary of Health and Human Services, by and through his undersigned counsel,

respectfully moves this Court to dismiss Plaintiff's complaint based on grounds and legal

principles set out in the enclosed Memorandum of Points and Authorities in Support of

Defendant's Motion to Dismiss.

A proposed order is attached.

Respectfully submitted,

s/

_____
KENNETH L. WAINSTEIN
United States Attorney
D.C. BAR No. 451058

/s/

_____

PETER S. SMITH
Assistant United States Attorney
D.C. Bar No. 465131
Judiciary Center Building
555 4th St., N.W., Room 10-106
Washington, D.C. 20530
(202) 307-0372

/s/

_____

PAUL E. SOEFFING
Attorney
D.C. Bar No. 459480
U.S. Department of Health and Human Services
Office of the General Counsel
Centers for Medicare & Medicaid Services Division
Room C2-05-23
7500 Security Boulevard
Baltimore, Maryland 21244-1850
(410) 786-1895

OF COUNSEL:

PAULA M. STANNARD
Acting General Counsel

KATHLEEN H. McGUAN
Associate General Counsel

MARK D. POLSTON
Deputy Associate General
  Counsel for Litigation

United States Department of
  Health and Human Services

2

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| GOLETA VALLEY COMMUNITY HOSPITAL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 05-2323 (DAR) |
| | ) | |
| MICHAEL O. LEAVITT, Secretary of Health and Human Services, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
**DEFENDANT'S MOTION TO DISMISS**

## I. INTRODUCTION

Plaintiff, Goleta Valley Community Hospital ("Goleta"), is a general, short term, acute care hospital located in Santa Barbara, California which participates in the Medicare program. Goleta has brought this action against Defendant Michael O. Leavitt, Secretary of Health and Human Services ("the Secretary"), seeking judicial review of an interim agency decision. Specifically, Plaintiff's complaint challenges the interim decision of the CMS Administrator remanding this case to lower agency officials for further proceedings. Plaintiff's complaint nowhere challenges a final decision by the Secretary on this matter as specifically prescribed by the Medicare statute, 42 U.S.C. § 1395oo(f)(1). Therefore, this Court does not have jurisdiction to entertain Plaintiff's complaint at this time. Even assuming, arguendo, that this Court believes that an appealable final determination has been reached, Plaintiff fails to present the Court with a live case or controversy under Article III of the Constitution because Plaintiff's claims have been paid by the Secretary and this dispute is therefore moot.

## II. STATUTORY AND REGULATORY FRAMEWORK

### A. The Medicare Program

Title XVIII of the Social Security Act ("Medicare statute") establishes the Medicare program, a federally-funded health insurance program that provides payment for covered services furnished to aged and certain disabled persons. See generally 42 U.S.C. §§ 1395-1395hhh. Under Part A of the statute, the program provides payment for certain inpatient hospital and post-hospital extended care services, including skilled nursing services. 42 U.S.C. §§ 1395c, 1395d, 1395i, 1395x(b), (i).[1] The Medicare program is administered by the Centers for Medicare & Medicaid Services ("CMS") which is a component agency of the Department of Health and Human Services.[2]

An institution or distinct part of an institution that primarily furnishes either skilled nursing care and related services or rehabilitation services is known as a "skilled nursing facility" ("SNF"). 42 U.S.C. §§ 1395i-3(a), 1395x(j), (u).

### 1. Reasonable Cost Reimbursement

Prior to 1998, the Medicare program paid SNFs for providing covered services in an amount equal to the lesser of the "reasonable cost" of or the customary charge for such services. See 42 U.S.C. § 1395f(b)(1); 42 C.F.R. § 413.1(a)(2)(ii), (b), (g).[3] "Reasonable cost" is

---

[1] Providers of services must enter into agreements with the Secretary in order to participate in and obtain payment from the Medicare program. See 42 U.S.C. §§ 1395g, 1395cc.

[2] CMS was formerly known as the Health Care Financing Administration ("HCFA"). The agency was renamed CMS in 2001. 66 Fed. Reg. 35,437 (July 5, 2001).

[3] For cost reporting periods beginning on or after July 1, 1998, SNFs are no longer reimbursed on a reasonable cost basis and, instead, are reimbursed under a "prospective payment system" ("PPS"). See 42 U.S.C. § 1395yy(e)(1), (e)(2)(D)-(E); 42 C.F.R. § 413.1(g)(2)(i).

2

statutorily defined to be the cost actually incurred in providing services, excluding all costs

"found to be unnecessary in the efficient delivery of needed health services."  42 U.S.C.

§ 1395x(v)(1)(A); cf. id. § 1395x(v)(7)(D).  Congress has vested the Secretary with broad

authority to refine this definition through regulation and has specifically authorized the Secretary

to issue regulations establishing upper "limits on the [costs] to be recognized as reasonable based

on estimates of the costs necessary in the efficient delivery of needed health services."  See id.

§ 1395x(v)(1)(A).

The Congressional prescription that Medicare reimburse only reasonable costs applies to

routine service costs.  See H.R. Conf. Rep. No. 105-217, at 753-54 (1997), reprinted in 1997

U.S.C.C.A.N. 176, 374-75; cf. 42 U.S.C. § 1395yy(e)(2)(B).  Routine service costs are those

costs incurred in providing services for which patients normally pay a single, daily inpatient

service charge.  These services, which include the provision of a bed and room, regular dietary

and nursing services, and minor medical supplies, reflect the SNF's cost of providing a bed and

basic services for each patient.  See 42 C.F.R. § 413.53(b); CMS Pub. 15-1, Provider

Reimbursement Manual Pt. 1 §§ 2202.6, 2203.1 (hereinafter "PRM-1").[4]  It is this limit – known

as the routine service cost limit – from which Goleta sought, and eventually received, an

exemption available to "new" providers.

2.  Routine Service Cost Limits ("RCLs")

Congress has determined that whenever an SNF's (non-capital) routine service costs

exceed certain per diem cost limitations, the costs exceeding the cap are deemed to be

---

[4] The Provider Reimbursement Manual, which contains CMS interpretive rules regarding Medicare reimbursement, see Shalala v. Guernsey Mem'l Hosp., 514 U.S. 87, 99 (1995), is available on-line at http://cms.hhs.gov/manuals/cmstoc.asp.

unreasonable and unnecessary "in the efficient delivery of health services." <u>See</u> 42 U.S.C. §§ 1395x(v)(7)(D), 1395yy(a).  Accordingly, the Secretary's per diem "routine service cost limits" place a ceiling on the amount of non-capital routine service costs that Medicare will reimburse per day of patient care.  <u>Cf.</u> 42 C.F.R. § 413.30(a)-(b) (1996).

The per diem routine service cost limit ("RCL") that is applicable to a specific SNF is determined by taking the average amount of per diem routine service costs incurred by SNFs of its type nationwide, adjusting this average to reflect the prevailing wage rates near the SNF, and setting the limit for free-standing SNFs at 112% of the adjusted average.  <u>See id.</u> 1395yy(a); <u>see also</u> <u>St. Francis Health Care Ctr. v. Shalala</u>, 205 F.3d 937, 940 & n.3 (6th Cir. 2000) (explaining RCLs); 57 Fed. Reg. 46,177, 46,177, 46,179-80 (1992) (explaining methodology).  Roughly speaking, this limit allows an SNF to be reimbursed for per diem routine service costs up to 12% higher than average, thereby "encourag[ing] providers with high[er] costs to bring their expenditures into line with their more efficient peers." <u>See</u> 44 Fed. Reg. at 51,544.[5]

To apply these "per diem" limits, an SNF's total routine service cost limit is calculated by multiplying the per diem limit by the number of days of inpatient care that the SNF has provided to Medicare patients.  Because a single inpatient day for a single Medicare patient counts as one day of care, a 15-bed SNF that has 10 inpatients each day during a 10-day period will provide 100 days of patient care during that period.  Such an SNF could then be reimbursed for (non-

---

[5] Hospital-based SNFs (like Goleta's distinct-part SNF) benefit from a higher cost limit than that applicable to free-standing SNFs.  The RCL for a hospital-based SNF equals the free-standing limit plus one-half of the difference between the free-standing limit and 112% of the average per diem routine service costs of hospital-based SNFs.  <u>See</u> 42 U.S.C. § 1395yy(a)(3)-(4); <u>St. Francis</u>, 205 F.3d at 940 & n.3 (explaining higher limit).

4

capital) routine service costs equal to 100 times the applicable per diem RCL.[6]

3. The New Provider Exemption

Recognizing that routine service cost limits may sometimes warrant adjustment when applied to a particular SNF, the Secretary has exercised his broad statutory authority to adjust the cost limitations "to the extent [he] deems appropriate" through a regulation that authorizes the agency to award "exemptions" from and "exceptions" to the limits.  See 42 U.S.C. § 1395yy(c); 42 C.F.R. § 413.30(e)-(f) (1996).  While the "exceptions" created by this regulation can increase an SNF's cost limit to account for the specific circumstances warranting the exception, the "exemption" found in section 413.30(e) completely exempts an SNF from the application of the routine service cost limits.  See 44 Fed. Reg. 31,802, 31,802 (1979).[7]

The new provider exemption was created in 1979 to address the "problem[] of initial underutilization" that new inpatient facilities may face.  See 44 Fed. Reg. at 31,802; see also PRM-1 § 2533.1.A (1997).  Such underutilization reflects a reduction in the number of days of patient care that such a new facility provides (relative to other SNFs) and has the effect of reducing the amount of reimbursement calculated from the applicable per diem RCL. Recognizing the "great difficulty [of] meeting applicable cost limits" in such circumstances, the Secretary established the exemption to authorize (but not require) the Department to exercise its discretion to provide new providers with "relief from the[] cost limits" during their initial years

---

[6] An SNF's (non-capital) routine service costs are calculated by subtracting the SNF's capital-related routine service costs from the total amount of general routine service costs.

[7] If the Secretary grants an exemption for a specific cost reporting period, he will not apply the requisite RCLs to cap the provider's routine service costs, but will apply other criteria regarding the reimbursement of "reasonable" costs.  See, e.g., 42 C.F.R. § 413.9(c)(2) (costs "substantially out of line" with other providers are not reasonable).

5

of operation.  See 42 C.F.R. § 413.30(e) (1996) (Department "may" grant exemption to new

provider); 44 Fed. Reg. at 31,802.

At the time of this dispute, the regulation defined "new provider" to mean a provider of

inpatient services that

> has operated as the type of provider (or the equivalent) for which it
> is certified for Medicare, under present and previous ownership,
> for less than three full years.

42 C.F.R. § 413.30(e) (1996); see also PRM-1 § 2604.1.[8]  While the regulation does not define

the term "previous ownership," CMS's Provider Reimbursement Manual lists several transactions

that constitute a "change of ownership" ("CHOW").  See PRM-1 § 1500 (1985).  The issue in

this case does not involve a CHOW, but rather concerns whether Goleta's respite care program

provided services equivalent to that of an SNF.

## B.  Administrative and Judicial Review

A provider must file an annual cost report with its fiscal intermediary in order to receive

Medicare reimbursement.  42 C.F.R. § 413.20.  After receiving the cost report, the fiscal

intermediary audits it where necessary and makes a final determination of the total amount of

Medicare reimbursement owed to the provider, which is set forth in an initial notice of program

reimbursement ("NPR").  42 C.F.R. §§ 405.1803, 413.20, 413.60.  If the provider is dissatisfied

with any aspect of the total program reimbursement set forth in the initial NPR, it may request a

---

[8] The new provider exemption was first promulgated in 1979 as 42 C.F.R. § 405.460(e)(2), but was subsequently redesignated in 1986 as 42 C.F.R. § 413.30(e)(2) and in 1995 as 42 C.F.R. § 413.30(e).  See 60 Fed. Reg. 45,778, 45,840, 45,849 (1995); 51 Fed. Reg. 34,790, 34,790 (1986); 44 Fed. Reg. 31,802, 31,804 (1979).  After the time relevant to this appeal, minor editorial changes were made to the exemption, which was moved to its current location at 42 C.F.R. § 413.30(d).  See 64 Fed. Reg. 42,610, 42,611-13 (1999).

hearing before the Provider Reimbursement Review Board ("PRRB" or "Board"). The PRRB is an administrative tribunal appointed by the Secretary. The Medicare statute provides that two of the Board members must be provider representatives. 42 U.S.C. § 1395oo(h). The Medicare statute provides that, in order to qualify for PRRB review, the amount in controversy must be at least $10,000 (at least $50,000 for a group appeal), and the hearing request must be submitted within 180 days of the initial NPR. 42 U.S.C. §§ 1395oo(a), (b).

A request for a new provider exemption must be submitted to the fiscal intermediary within 180 days of the initial NPR. 42 C.F.R. § 413.30(c). The fiscal intermediary makes a recommendation to CMS, which, in turn, makes a decision on the provider's exemption request. 42 C.F.R. § 413.30(d). CMS's decision is subject to PRRB review, and the 180-day period in which a hearing request must be submitted is, in effect, tolled pending CMS's decision.

If the jurisdictional prerequisites are satisfied and the PRRB has authority to decide the matter at issue, see 42 C.F.R. § 405.1867, the PRRB may hold a hearing and issue a decision, which is subject to further review by the CMS Administrator, on behalf of the Secretary. 42 U.S.C. § 1395oo(f)(1); 42 C.F.R. § 405.1875. If the Administrator decides to review a Board decision, "the Administrator will affirm, reverse, modify or remand the case." 42 C.F.R. § 405.1875(g)(1). After remand, a new decision of the Board "will be final unless the Administrator reverses, affirms, modifies, or again remands the decision . . ." 42 C.F.R. § 405.1875(h)(4).

The Medicare statute authorizes the provider to request judicial review, within 60 days of the final agency decision, in a federal district court with venue. 42 U.S.C. § 1395oo(f)(1). The Medicare statute further provides that 42 U.S.C. § 1395oo(f)(1) is the exclusive jurisdictional

basis for judicial review of all aspects of Medicare provider reimbursement disputes. 42 U.S.C. §§ 405(h), 1395ii; Heckler v. Ringer, 466 U.S. 602 (1984).

## III.  STATEMENT OF FACTS

### A.  Factual Background

Plaintiff, Goleta Valley Community Hospital, maintains a hospital-based SNF located on its campus in Santa Barbara, California. Complaint ¶¶ 1, 23. In March 1995, Goleta contacted its fiscal intermediary to begin the process of applying for a new provider exemption. Complaint ¶ 26; Exhibit ("Ex.") 2 at 3.[9] After the fiscal intermediary had forwarded the request to CMS for review, CMS requested, on two occasions, additional documentation from Goleta. Ex. 1. In its second request, CMS asked Goleta to submit a complete list of the medical services furnished by Goleta's respite program. Ex. 1; Ex. 2 at 3; Ex. 3 at 1-2. CMS requested this information so that it could make a determination as to whether Goleta had previously been operating as an SNF or its equivalent through the services offered in its respite program. See 42 C.F.R. § 413.30(e) (1996); Ex. 2 at 3; Ex. 3 at 1. In response, Goleta submitted information it hoped would demonstrate that it was not operating as the equivalent of an SNF through its respite care program. It submitted a respite care brochure, a description of the respite program, a calendar showing available weekends for the Respite Care-Guest Weekend Program, and copies of certain pages of a draft position paper. Ex. 2 at 3; Ex. 3 at 2. On September 27, 1997, after reviewing

---

[9] A court may resolve a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) in two ways. First, the court may determine the motion based solely on the complaint. Herbert v. National Academy of Science, 974 F.2d 192, 197 (D.C. Cir. 1992). Alternatively, to determine the existence of jurisdiction, a court may look beyond the allegations of the complaint, consider affidavits and other extrinsic information, and ultimately weigh the conflicting evidence. See id. It is in view of the latter that Defendant has attached exhibits to this motion.

these materials and finding them inadequate to support Goleta's request for the exemption, CMS

denied the exemption.  Ex. 1; Ex. 2 at 3.

**B.  Procedural Background**

  Goleta appealed the agency's denial to the PRRB.  Ex. 2 at 3.  The PRRB held a hearing

on the record on May 26, 2005.  Ex. 2 at 1.  On August 12, 2005, the PRRB issued a decision

reversing CMS's denial of Goleta's request for an exemption to the routine service cost limits as

a new provider.  Ex. 2.

  The CMS Administrator reviewed the PRRB decision and the entire record.  Ex. 3 at 4.

On October 5, 2005, the Administrator vacated the PRRB's decision and remanded the matter to

CMS for a determination on Goleta's application for an exemption based on the entire record and

taking into consideration a recent decision of the U.S. Court of Appeals for the District of

Columbia Circuit.  See St. Elizabeth's Med. Ctr. of Boston v. Thompson, 396 F.3d 1228 (D.C.

Cir. 2005); Ex. 3 at 6.  Because the Administrator's decision remanded this matter to CMS, it

was an interim decision – not a final determination of the Secretary subject to review under the

Medicare statute.  42 U.S.C. § 1395oo(f)(1).  Nevertheless, Goleta filed its district court

complaint on December 5, 2005.

  Upon remand, CMS reevaluated Goleta's request for a new provider exemption and

granted the exemption in a letter to the fiscal intermediary dated November 16, 2005.  Ex. 4 at 2-

3.  The fiscal intermediary forwarded CMS's approval letter to Goleta by letter of December 14,

2005 and stated that it would implement the decision as soon as possible.  Ex. 4 at 1.  On January

18, 2006, the intermediary issued revised NPRs for the three cost reporting periods at issue.  Ex.

5 at 3-24.  Payment was made to Goleta on January 25, 2006, pursuant to the revised NPRs.  Ex.

5 at 1-2.

    For the reasons discussed below, this case should be dismissed.

## IV.  ARGUMENT

**A.  This Action Should Be Dismissed Because This Court Lacks Jurisdiction to Review the Administrator's October 3, 2005 Decision**

    1.  42 U.S.C. § 1395oo(f) Is the Exclusive Source of Federal Court Jurisdiction Over Medicare Provider Reimbursement Disputes

    It is well settled that "[t]he United States, as sovereign, 'is immune from suit save as it consents to be sued, . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.'"  Lehman v. Nakishian, 453 U.S. 156 (1981) (quoting United States v. Testan, 424 U.S. 392 (1976) and United States v. Sherwood, 312 U.S. 584 (1941)).  In addition, Congress may prescribe the procedures and conditions under which judicial review of administrative orders may be obtained.  Tacoma v. Taxpayers of Tacoma, 357 U.S. 320, 336 (1958); American Power & Light Co. v. S.E.C., 325 U.S. 385, 389-90 (1945).

    It has long been established "that where Congress has provided statutory review procedures designed to permit agency expertise to be brought to bear on particular problems, those procedures are to be exclusive."  Whitney Nat'l Bank v. Bank of New Orleans & Trust Co., 379 U.S. 411, 420 (1965).  By operation of 42 U.S.C. §§ 405(h), 1395ii, and 1395oo(f), Congress has provided the exclusive means of administrative and judicial review of Medicare provider reimbursement decisions such as those presented by the hospital in this case.  See Weinberger v. Salfi, 422 U.S. 749, 757 (1975); Heckler v. Ringer, 466 U.S. 602, 614-15 (1984).

    42 U.S.C. § 1395ii of the Medicare statute limits judicial review of Medicare matters by incorporating § 405(h) of the Social Security Act, 42 U.S.C. § 405(h).  This provision

10

specifically states that

> No findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Secretary, or any officer or employee thereof shall be brought under sections 1331 [general federal question] or 1346 [United States as a defendant] of title 28 to recover on any claim arising under this subchapter.

42 U.S.C. § 405(h) (emphasis added). Thus, if a provider desires judicial review of a reimbursement decision of the Secretary, it must follow the administrative procedures provided by the Medicare statute, that is, the procedures "herein provided." If the provider does not follow the established procedures, the statute is quite clear that, no "finding of fact or decision of the Secretary" that the provider wishes to challenge may "be reviewed by any person, tribunal, or governmental entity." 42 U.S.C. § 405(h). Applying the jurisdictionally limiting provisions of 42 U.S.C. §§ 405(h), 1395ii to this case means that Plaintiff must adhere to the procedures set out in 42 U.S.C. § 1395oo(f) before this Court may review Plaintiff's reimbursement claim. The touchstone for judicial review of all Medicare disputes is a final decision of the Secretary. Plaintiff's complaint seeks review of no such decision. Rather, it asks the Court to review an interim order of the CMS Administrator. Complaint ¶ 13. The Court has no jurisdiction to review that remand.

>   2. Plaintiff Is Not Appealing the Final Decision of the Secretary That Section 1395oo(f) Requires Before This Court May Assert Jurisdiction

   1. Each of the jurisdictional prerequisites of 42 U.S.C. § 1395oo(f) must be fully satisfied before a federal court may assert jurisdiction over a Medicare provider reimbursement claim. Courts have consistently found that judicial review is available only when there is a final

11

decision by the Secretary.[10]  Athens Cmty. Hosp., Inc. v. Schweiker, 686 F.2d 989, 993-94 (D.C.

Cir. 1982) ("The first issue before the Court, therefore, is whether the decision by the PRRB . . .

is a 'final decision' sufficient to establish jurisdiction").  Accord Washington Hosp. Ctr. v.

Bowen, 795 F.2d 139, 150 (D.C. Cir. 1986); Sunshine Health Sys., Inc. v. Bowen, 809 F.2d 1390

(9th Cir. 1987); St. Francis Hosp. v. Bowen, 802 F.2d 697, 701 (4th Cir. 1986); Good Samaritan

Med. Ctr. v. Secretary of Health & Human Servs., 776 F.2d 594, 598 (6th Cir. 1985).

     Thus, in cases such as this one, in order for a court to exercise subject matter jurisdiction

over a Medicare provider's claim, the jurisdictional prerequisites for that review must be met, the

provider must have received a final decision from the Secretary and the provider must timely file

suit in the appropriate district court.  42 U.S.C. §§ 1395oo(a), (b), and (f).  Unless these

statutorily prescribed procedures have been followed, judicial review of any claim by the

provider is simply not available.

     Here, the Administrator issued a decision which remanded the case to the agency for

further review based on his determination that there was sufficient documentation in the record

for CMS to render a decision on the merits, see Ex. 3 at 6, and based on caselaw that had

developed after CMS's initial review of the matter, see Ex. 3 at 4, 6 (citing St. Elizabeth's Med.

Ctr. of Boston v. Thompson, 396 F.3d 1228 (D.C. Cir. 2005)).  The Federal Regulations clearly

articulate that this remand is not a final agency decision.  42 C.F.R. § 405-1875(h)(4).

_____

[10] Plaintiff asserts jurisdiction under 42 U.S.C. § 1395oo(f) and 28 U.S.C. § 1331.  Complaint ¶ 3.  It is beyond cavil that federal question jurisdiction, 28 U.S.C. § 1331, is squarely precluded under 42 U.S.C. § 405(h) as incorporated into the Medicare statute by 42 U.S.C. § 1395ii. Heckler v. Ringer, 466 U.S. 602, 614-15 (1984).  Therefore, the only real jurisdictional question here is whether jurisdiction under 42 U.S.C. § 1395oo(f) exists.  Accordingly, this memorandum will devote itself to explaining why no such jurisdiction exists therein.

Nonetheless, it is this remand decision that Plaintiff has appealed.  Complaint ¶ 13.  Thus,

Plaintiff here is not challenging a "final decision" of the Secretary that disposes of all issues in

Plaintiff's appeal, namely, a decision on the merits of CMS's determination as to whether

Goleta's SNF qualifies for a new provider exemption.  Such a final decision could be appealable

under the controlling statute.  42 U.S.C. § 1395oo(f)(1).  Instead, Plaintiff is challenging the

Administrator's remand of this matter to the agency for further consideration.  By appealing this

remand order, Plaintiff asks the Court to step into the ongoing administrative process.  Leaving

aside the devastating effect allowing such intervention would have on any orderly administrative

process, such intervention is not contemplated by the Medicare statute.  Indeed, it is precluded by

statute.  Plaintiff simply fails to meet the statutory requirements for district court jurisdiction.

        2.  The requirement that all issues raised in a provider's appeal be finally decided before

the provider may seek judicial review is analogous to the rule requiring that a party receive a

"final judgment" from a district court before proceeding to the court of appeals.  28 U.S.C. §

1291.  As the Supreme Court has consistently found, requiring a party to "raise all claims of error

in a single appeal following final judgment" affirms the deference owed to the trier of fact, and

"avoid[s] the . . . harassment and cost of a succession of separate appeals from the various ruling

to which litigation may give rise."  <u>Firestone Tire & Rubber Co. v. Risjord</u>, 449 U.S. 368, 374

(1981) (quoting <u>Cobbledick v. United States</u>, 309 U.S. 323, 325 (1940)).  Additionally, the

requirement "serves the important purpose of promoting efficient judicial administration."

<u>Firestone Tire & Rubber Co.</u>, 449 U.S. at 374.  These same underlying principles apply equally

to appeals brought in district court from decisions of the Secretary as they do to appeals brought

in the court of appeals from decisions of the district court.  Like a court of appeals, a district

13

court should refuse to hear an appeal until all "claims of error" have been finally decided by an administrative agency, and it is plain here that the decision that Goleta appeals does not finally resolve all its claims by the Secretary.

The Secretary recognizes that the rule that district court remands are not appealable is not absolute.  In the Social Security context, the Supreme Court has held that district court remands to administrative agencies are appealable when the order at issue finally resolves an important legal issue and review of that issue would be foreclosed as a practical matter if an immediate appeal was not undertaken.  <u>Sullivan v. Finkelstein</u>, 496 U.S. 617, 626 (1990).  Even under the <u>Finkelstein</u> exception, however, Plaintiff should be precluded from having an appeal of the Administrator's remand order heard by this Court.  The Administrator's decision to remand the matter to the agency for further consideration of the documentation submitted by Goleta is a typical fact-based remand of the type commonly ordered by adjudicatory bodies, and involves no important legal matter requiring immediate review by this Court.  Any such argument that might be advanced by Plaintiff should be rejected by this Court because of the "garden variety" factual remand present in this case.

**B.  Even If It Asserts Jurisdiction Over Plaintiff's Claims, This Court Should Still Dismiss This Action As Moot Because the Agency, Upon Remand, Granted Plaintiff's Exemption Request**

Even assuming, arguendo, this Court were to view the remand order as a final decision subject to the Court's jurisdiction, the Court should nonetheless dismiss this case as failing to present a live case or controversy under Article III of the Constitution and as moot.  The facts here reveal that the remand proceedings have resulted in the agency's approval of Goleta's exemption request and the hospital has been paid.  <u>See</u> Ex. 5.

14

The Supreme Court has held that "[n]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." Simon v. Eastern Ky. Welfare Rights Org., 426 U.S. 26, 37 (1976); see also Flast v. Cohen, 392 U.S. 83, 95 (1968). Under Article III of the U.S. Constitution, federal courts may adjudicate only actual cases or controversies. Deakins v. Monaghan, 484 U.S. 193, 199 (1988); Preiser v. Newkirk, 422 U.S. 395, 401 (1975). "Article III of the Constitution requires that there be a live case or controversy at the time that a federal court decides the case. . . ." Burke v. Barnes, 479 U.S. 361, 363 (1987). "This case-or-controversy requirement subsists through all stages of federal judicial proceedings, trial and appellate . . . . The parties must continue to have a 'personal stake in the outcome' of the lawsuit." Spencer v. Kemna, 523 U.S. 1, 7 (1998) (quoting Lewis v. Continental Bank Corp., 494 U.S. 472, 477-78 (1990)). As the Supreme Court has emphasized, "[t]his means that, throughout the litigation, the plaintiff 'must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision.'" Id. Mootness has been characterized as "'the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue through its existence (mootness).'" Arizonans for Official English v. Arizona, 520 U.S. 43, 68, n.22 (1997) (quoting U.S. Parole Comm'n v. Geraghty, 445 U.S. 388, 397 (1980)). "A moot case presents no Article III case or controversy, and a court has no constitutional jurisdiction to resolve the issues it presents." Goldin v. Bartholow, 166 F.3d 710, 717 (5th Cir. 1999). In addition, as the Supreme Court has explained, federal courts must have jurisdiction over every aspect of cases presented for review. Ruhrgas v. Marathon Oil Co., 526 U.S. 574, 583 (1999) ("subject matter delineations

15

must be policed by the courts on their own initiative even at the highest level.").

Applying these principles here, it is plain that, even if this Court were to assert jurisdiction, it should dismiss Goleta's appeal as moot. By virtue of the fact that Goleta's request for a new provider exemption was remanded by the Administrator to CMS for further consideration, and upon that remand was granted and paid, there remains no adverse decision for Goleta to appeal.[11/] Ex. 5 at 1-2. Because Goleta's case has been rendered moot by CMS's November 16, 2005 decision granting the exemption, see Ex. 3, there no longer remains a case or controversy within the meaning of Article III for this Court to consider. As the Supreme Court has articulated, "there is nothing for [the Court] to remedy, even if [it] were disposed to do so. [Federal courts] are not in the business of pronouncing that past actions which have no demonstrable continuing effect were right or wrong." Kemna, 523 U.S. at 18.

---

[11/] As noted above, the fiscal intermediary issued revised NPRs to Goleta dated January 18, 2006, effectuating CMS's grant of the new provider exemption and revising Goleta's Medicare reimbursement accordingly for the cost reporting periods at issue. Ex. 5. These revised NPRs are subject to appeal pursuant to 42 U.S.C. § 1395oo(a) and 42 C.F.R. § 405.1801 et seq. Therefore, even if Goleta wished to appeal the agency decision granting the exemption, or the fiscal intermediary's effectuation thereof, such appeal would be an appeal of the revised NPRs to its fiscal intermediary or the PRRB, not an immediate appeal to federal district court. Id.

## <u>CONCLUSION</u>

For the foregoing reasons, the Secretary respectfully requests that the Court dismiss

Plaintiff's complaint with prejudice.

Respectfully submitted,

/s/

_____

KENNETH L. WAINSTEIN,
United States Attorney
D.C. BAR No. 451058

/s/

_____

PETER S. SMITH
Assistant United States Attorney
D.C. Bar No. 465131
Judiciary Center Building
555 4th St., N.W., Room 10-106
Washington, D.C. 20530
(202) 307-0372

/s/

_____

PAUL E. SOEFFING
Attorney
D.C. Bar No. 459480
U.S. Department of Health and Human Services
Office of the General Counsel
Centers for Medicare & Medicaid Services Division
Room C2-05-23
7500 Security Boulevard
Baltimore, Maryland 21244-1850
(410) 786-1895

<u>OF COUNSEL</u>:

PAULA M. STANNARD
Acting General Counsel

KATHLEEN H. McGUAN

17

Associate General Counsel

MARK D. POLSTON
Deputy Associate General
  Counsel for Litigation

United States Department of
  Health and Human Services