# PROVIDER REIMBURSEMENT REVIEW BOARD DECISION
ON THE RECORD
2005-D53

| | |
|---|---|
| **PROVIDER -**<br>Goleta Valley Community Hospital a/k/a<br>Goleta Valley Cottage Hospital<br>Goleta, California | **DATE OF HEARING -**<br>May 26, 2005 |
| Provider No.: 05-0357 | Cost Reporting Periods Ended -<br>September 30, 1995; September 30, 1996<br>and December 31, 1996 |
| vs. | |
| **INTERMEDIARY -**<br>BlueCross BlueShield Association/<br>United Government Services, LLC - CA | **CASE NOs.:** 97-1198; 99-0246 and 99-0247 |

## INDEX

| | Page No. |
|---|---|
| Issue........................................................................................................................................ | 2 |
| Medicare Statutory and Regulatory Background............................................................. | 2 |
| Statement of the Case and Procedural History................................................................. | 3 |
| Parties' Contentions............................................................................................................ | 3 |
| Findings of Fact, Conclusions of Law and Discussion...................................................... | 4 |
| Decision and Order.............................................................................................................. | 5 |

ISSUE:

Did the Provider supply sufficient information to enable the Centers for Medicare & Medicaid Services to make a decision regarding the Provider's request for an exemption to Medicare's routine service cost limits for skilled nursing facilities (SNF)?[1]

MEDICARE STATUTORY AND REGULATORY BACKGROUND:

This is a dispute over the amount of Medicare reimbursement due a health care provider.

The Medicare program provides health insurance to the aged and disabled. 42 U.S.C. §§1395-1395cc. The Centers for Medicare & Medicaid Services (CMS), formerly the Health Care Financing Administration (HCFA), is the operating component of the Department of Health and Human Services (DHHS) charged with the program's administration. CMS' payment and audit functions under the Medicare program are contracted out to insurance companies known as fiscal intermediaries. Fiscal intermediaries determine payment amounts due providers under Medicare law and interpretative guidelines published by CMS. See, 42 U.S.C. §1395(h), 42 C.F.R. §§413.20(b) and 413.24(b).

At the close of its fiscal year, a provider must submit a cost report to the fiscal intermediary showing the costs it incurred during the fiscal year and the portion of those costs to be allocated to Medicare. 42 C.F.R. §413.20. The fiscal intermediary reviews the cost report, determines the total amount of Medicare reimbursement due the provider, and issues the provider a Notice of Program Reimbursement (NPR). 42 C.F.R §405.1803. A provider dissatisfied with the intermediary's final determination of total reimbursement may file an appeal with the Provider Reimbursement Review Board (Board) within 180 days of the NPR. 42 U.S.C. §1395oo(a); 42 C.F.R. §405.1835.

Section 1861(v)(1)(A) of the Social Security Act sets forth the general rules under which CMS may establish limits on provider costs recognized as reasonable in determining Medicare program payments. In part, the statute provides that the reasonable cost of any service shall be the actual cost incurred, excluding any part of such costs found to be unnecessary in the efficient delivery of needed health services. The statute also authorizes the Secretary of Health and Human Services to establish cost limits. Essentially, the limits recognize reasonable costs based upon estimates of costs found to be necessary in the efficient delivery of covered items and services. Implementing regulations at 42 C.F.R. §413.30 also explain that a provider may obtain an exemption to the limits if it qualifies as a "new provider." Specifically, 42 C.F.R. §413.30 states:

---

[1] The Provider and the Intermediary submitted a Stipulations of the Parties (Nov. 2004) in which it is agreed that: should the Board rule in favor of the Provider it will decide a second issue which is whether or not the Provider is entitled to an exemption; that there shall be a concurrent hearing for the 3 cases addressed herein; and, that the Board's decision with respect to the initial issue stated above is dispositive for all three cases.

(e) *Exemptions.* Exemptions from the limits imposed under this section may be granted to a new provider. A new provider is a provider of inpatient services that has operated as the type of provider (or the equivalent) for which it is certified for Medicare, under present and previous ownership, for less than three full years.

## STATEMENT OF THE CASE AND PROCEDURAL HISTORY:

Goleta Valley Cottage Hospital (Provider) is a general, short term, acute care facility located in Goleta, California. On March 13, 1995, the Provider contacted Blue Cross of California (Intermediary) to obtain a 3-year "new provider" exemption from Medicare's cost limits for its newly certified hospital-based SNF.[2] Once the Provider's request was complete, the Intermediary forwarded it to CMS for review. Thereafter, CMS requested that the Provider submit a complete list of the medical services furnished by the Provider's respite program. CMS wanted this information to determine whether or not the Provider had previously furnished SNF services, i.e., whether or not the Provider had previously operated as a SNF or the equivalent pursuant to 42 C.F.R. §413.30(e). In response, the Provider submitted a respite care brochure, a description of the respite program and, a calendar showing available weekends for the Respite Care-Guest Weekend Program. Also submitted were copies of certain pages of the draft position paper the Provider had prepared for submission to the Board supporting its position that SNF services were not furnished through the respite care program.[3] Based upon this information, CMS denied the Provider's request.

The Provider appealed CMS' denial to the Board pursuant to 42 C.F.R. §§405.1835-405.1841 and met the jurisdictional requirements of those regulations. The amount of Medicare funds in controversy is approximately $1,025,000.[4]

The Provider was represented by Barron P. Bogatto, Esq., of Adams and Reese LLP. The Intermediary was represented by Bernard Talbert, Esq., Associate Counsel, Blue Cross Blue Shield Association.

## PARTIES' CONTENTIONS:

The Intermediary contends that 42 U.S.C §1395yy and 42 C.F.R. §413.30 provide CMS with ultimate authority and responsibility to request information on the Provider's respite program in order to make an appropriate decision on the Provider's exemption request. Pursuant to 42 C.F.R §413.20, Financial data and reports, and 42 C.F.R. §413.24, Adequate cost data and cost finding, the Provider was required to furnish data CMS needed to make that determination.

---

[2] Exhibit P-11. See also Exhibit I-1. Note: Refer to Case No. 97-1198 for all footnotes.

[3] Exhibits P-18 and P-21.

[4] The amount in controversy consists of approximately $400,000 applicable to the Provider's September 30, 1995 cost reporting period, $500,000 applicable to September 30, 1996, and $125,000 applicable to December 31, 1996.

The Provider asserts that it has furnished adequate documentation to show that SNF services were not furnished through its respite program. The Provider refers to its brochure, which states that the respite-guest weekend program offers nutritional services including tube feeding, if necessary; twenty-four hour care that includes assistance, as needed, in bathing, dressing, and taking medication; and treatments ordered by the guest's physicians.[5] The Provider also refers to a portion of its position paper furnished to CMS showing the distinctions between its respite program and SNF services. For example, the Provider points out that 42 C.F.R. §409.20(a) states that SNF services are furnished to inpatients, and respite guests are not inpatients of the Goleta Valley Cottage Hospital; that 42 C.F.R. §409.30(a) applies pre-admission requirements to SNF services, but the respite program is voluntary and has no qualifying stay in a hospital; and that 42 C.F.R. §409.31(a)(2) explains that SNF services require the skills of professional personnel such as registered nurses, licensed practical nurses, physical therapists, occupational therapists, etc; however, respite guests do not require the skills of these professional personnel but receive their established pattern of home care.[6]

FINDINGS OF FACT, CONCLUSIONS OF LAW AND DISCUSSION:

The Board, after consideration of Medicare law and guidelines, parties' contentions, and evidence presented, finds and concludes as follows:

The issue in this case is a matter of determining whether or not the Provider furnished sufficient information to show that it did not operate as a SNF or the equivalent through the services furnished by its respite program. Except for this issue, there is no argument that the Provider's hospital-based SNF qualifies as a "new provider" and should be exempt from Medicare's routine service cost limits.

As discussed above, the Provider responded to CMS' request for a complete list of medical services furnished by its respite program by submitting a respite program brochure, a description of the program, and a calendar showing the dates that its respite services are available. Based upon this information, CMS denied the Provider's request, arguing that the Provider did not furnish adequate data as required by 42 C.F.R §413.20 and 42 C.F.R. §413.24.

Upon review of the pertinent regulations and the Provider's documentation, the Board finds that the Provider's respite program did not operate as a SNF or the equivalent and that CMS' denial of the Provider's request was improper. 42 C.F.R. §413.30 explains that a new provider is a "<u>provider of inpatient services</u>. . ." The Provider's documentation clearly shows that the respite program did not serve individuals who required/or who were receiving inpatient care. Rather, the respite program provided services to individuals who were receiving home care. The Provider's brochure, its descriptive literature apparently available to the public, and the calendar of available

---

[5] Provider's Position Paper at 8. Exhibit P-18.

[6] See Exhibit P-21 for a complete listing of the distinctions made by the Provider between its respite program and SNF services.

dates for respite service, show that the respite program was established to provide relief to people who were providing care to individuals in their homes. The respite program was available only two weekends a month which, as a health service, can not be construed to meet the needs of individuals actually requiring inpatient services.

The Board acknowledges that some skilled services may have been furnished through the respite program. As the Provider's documentation explains, weekend guests may receive assistance with feeding tubes and treatments ordered by physicians. However, this type of intermittent care does not represent a reasonable standard upon which to characterize a facility as a SNF or the equivalent. Pursuant to 42 U.S.C. §1395i-3(a), a facility must be "primarily engaged" in providing skilled nursing care for residents in order to be recognized as a SNF.

Finally, the Board acknowledges CMS' authority to request from providers whatever documentation it deems necessary to assure proper program payments. The Board also recognizes CMS' authority to deny a provider's claim for failure to submit such information. However, with respect to the instant case, the Board finds that a complete "listing" of the medical services furnished by the Provider's respite program was unnecessary in light of the information the Provider had made available. CMS had all the information needed to determine that the Provider had not operated as a SNF or the equivalent through its respite program services.

DECISION AND ORDER:

The Provider furnished sufficient documentation to show that its weekend respite care program did not operate as a SNF or the equivalent. The Provider is entitled to a new provider exemption from Medicare's routine service cost limits. CMS' denial of the Provider's request for an exemption is reversed.

Board Members Participating:

Suzanne Cochran, Esq.
Dr. Gary B. Blodgett
Martin W. Hoover, Jr., Esq.
Elaine Crews Powell, C.P.A
Anjali Mulchandani-West

FOR THE BOARD:

AUG 1 2 2005

Suzanne Cochran, Esq.
Chairman