DEPARTMENT OF HEALTH & HUMAN SERVICES
Centers for Medicare & Medicaid Services
7500 Security Boulevard, Mail Stop C3-01-20
Baltimore, Maryland 21244-1850
Telephone 410-786-3176 Facsimile 410-786-0043



**Office of the Attorney Advisor**

OCT - 6 2005

Mr. Barron P. Bogatto
Jackson Walker LLP
1401 McKinney Street, Suite 1900
Houston, TX 77010

Re: <u>Goleta Valley Community Hospital a/k/a Goleta Valley Cottage Hospital</u>,
    PRRB Decision No. 2005-D53

Dear Mr. Bogatto:

Enclosed is an Administrator's decision in the above case vacating the decision of the Provider Reimbursement Review Board and remanding the above case to CMS. Please send any future correspondence to:

> Mr. Laurence Wilson
> Centers for Medicare & Medicaid Services
> 7500 Security Boulevard, Mailstop C5-02-23
> Baltimore, MD 21244-1850

                                Sincerely yours,

                                Jacqueline R. Vaughn
                                Attorney Advisor

Enclosure

cc: Bernard M. Talbert, Esquire, Intermediary's Representative

# CENTERS FOR MEDICARE AND MEDICAID SERVICES

## *Decision of the Administrator*

| | |
|---|---|
| **In the case of:** | **Claim for:** |
| Goleta Valley Community Hospital a/k/a Goleta Valley Cottage Hospital | Provider Reimbursement for Cost Reporting Periods Ending: 09/30/95, 09/30/96, 12/31/96 |
| **Provider** | |
| vs. | |
| Blue Cross Blue Shield Association/ United Government Services, LLC-CA | Review of: PRRB Dec. No. 2005-D53 Dated: August 12, 2005 |
| **Intermediary** | |

This case is before the Administrator, Centers for Medicare & Medicaid Services (CMS), for review of the decision of the Provider Reimbursement Review Board (Board). The review is during the 60-day period in Section 1878(f)(1) of the Social Security Act (Act), as amended (42 USC 1395oo(f)). Comments from the Provider have been received. Accordingly, this case is now before the Administrator for final administrative review.

### ISSUE AND BOARD DECISION

The issue is whether the Provider furnished sufficient information to enable CMS to make a decision on the Provider's request for a new provider exemption to Medicare's routine cost limits (RCLs) for skilled nursing facilities (SNFs).

The Board held that CMS' denial of the Provider's request was improper and determined that the Provider's request should be granted on the merits. The Board stated that the only issue in the case was the adequacy of the documentation supplied by the Provider to demonstrate that it did not operate as a SNF or the equivalent through the services furnished in its "respite care program." In that regard, the Board found that, contrary to CMS' determination, the Provider responded fully to CMS' request for a complete list of medical services furnished in its respite care

program. The Provider's documentation included a respite care program brochure, a description of the program, and a calendar showing the respite care weekend dates.

Applying the governing regulation at 42 CFR 413.30 to the Provider's documentation, the Board found that the Provider did not operate as a SNF or its equivalent in its respite care program, and, thus, CMS' denial of the exemption request was improper. The Board pointed out that the regulation defines a new provider as a "'provider of inpatient services.'" However, the Board found that the Provider's documentation indicated that individuals in the respite care program were not inpatients. Rather, they were individuals who were receiving care in their homes, and the respite care service was available only two weekends a month. Thus, the Board concluded, the respite care program could not be construed to furnish services to meet the needs of inpatients.

The Board acknowledged that some skilled services were provided during the respite care weekends, i.e., tube feedings and physician-ordered treatments. However, pursuant to §1819 of the Act, a facility must be "primarily engaged" in providing SNF care for residents to be recognized as a SNF. The Board found that intermittent care such as tube feedings and physician-ordered treatments do not reflect a facility primarily engaged in furnishing skilled services or the equivalent.

Finally, the Board recognized CMS' right to request information it deems necessary to assure proper program payments and its right to deny exemption requests based on a provider's failure to submit such documentation. However, the Board found in the instant case that a listing of the complete medical services of the Provider was unnecessary in light of the documentation the Provider had already submitted, which was sufficient to determine that the Provider had not operated as a SNF or its equivalent.

Accordingly, the Board reversed CMS' denial of the Provider's request for a new provider exemption and granted the Provider's request on the merits.

## SUMMARY OF COMMENTS

The Provider pointed out that CMS' notice of review (NOR), pursuant to 42 CFR 405.1875(d)(1), stated that the review would "'involve[] ... whether the Board's decision is consistent with pertinent laws, regulations, and other criteria cited by the Board. The Board's decision will be reviewed in light of prior decisions of the Administrator and relevant court decisions.'" Accordingly, if the Administrator relies upon any matter of which the Provider did not receive notice, nor had an opportunity to which to respond as a ground for reversal, the Provider contended that there would be a fundamental defect in due process.

The Provider went on to argue that it had submitted sufficient documentation for a determination from CMS, and that the granting of a new provider exemption for the Provider was warranted. Two recent cases supported the Board's finding that operation of a respite care program which provided only occasional skilled services does not indicate the operation of a SNF or the equivalent, under the governing regulation at §413.30(e). Section 1819 of the Act establishes that a facility must be "primarily engaged" in providing skilled nursing and/or rehabilitative services in order to be recognized as a SNF. In *St. Elizabeth's Med. Ctr. of Boston v. Thompson*,[1] the Court found that the provider was primarily engaged in providing custodial services to its patients and only occasional skilled services, which did not meet the standard set by §1819 of the Act. Similar to the custodial nature of *St. Elizabeth's*, the Provider argued that its respite program principally provided non-skilled, custodial care. The Provider stressed that, only on a very limited basis has it furnished any skilled services in its respite care program. Likewise, the Provider noted that the Court in *Milton Transitional Care Unit v. Thompson*,[2] relying on *St. Elizabeth's*, found that the record failed to show that the facility was primarily engaged in providing skilled nursing or rehabilitative services. The Provider concluded that both of the above cases provide support for the Board's finding that services in a respite care program do not rise to the level of SNF services under the Act, and no party has come forth with cases to the contrary.

## DISCUSSION

The entire record furnished by the Board has been examined, including all correspondence, position papers, exhibits, and subsequent submissions. All comments timely received have been included in the record and considered.

From the beginning of the Medicare program, Medicare reimbursed hospitals and other health care providers on the basis of reasonable costs of covered services. Section 1861(v)(1)(A) of the Act defines "reasonable cost" as the "cost actually incurred," excluding amounts not necessary to the efficient provision of health care. Section 223 of the Social Security Act of 1972 amended section 1861(v)(1)(A) to authorize the Secretary to set prospective limits on the costs reimbursement by Medicare.[3] These limits are referred to as the "223 limits" or the "routine cost

---

[1] 396 F.3d 1228 (D.C. Cir. Feb. 4, 2005).

[2] Civ. Action No. 03-0155 (U.S. D. Jun. 27, 2005).

[3] Pub. Law 92-603.

limits" (RCLs), and were based on the costs necessary in the efficient delivery of services. Beginning in 1974, the Secretary published RCLs in the Federal Register. The RCLs initially covered only inpatient general routine operating costs.

In an effort to further curb hospital cost increases and encourage greater efficiency, in 1982, Congress established broader cost limits than those authorized under §1861(v)(1)(A). The Tax Equity and Fiscal Responsibility Act added §1886(a) to the Act, which expanded the existing cost limits to include ancillary services operating costs and special care unit operating costs in addition to routine operating costs. Pursuant to §1886(a)(1)(A)(ii) of the Act, these expanded cost limits, referred to as the "inpatient operating cost limits," applied to cost reporting periods beginning after October 1, 1982.

Relevant to this case, exemptions from application of the RCLs were promulgated at 42 CFR 413.30, which further established certain criteria for a "new provider" exemption. In order to qualify for a new provider exemption, the regulation at §413.30(e) states that the provider must establish that it is a "provider of inpatient services that has operated as the type of provider (or the equivalent) for which it is certified for Medicare, under present and previous ownership, for less than three full years."

With respect to the process for filing an exemption request, the regulation at §413.30(c) explains that:

> The providers' request must be made to its fiscal intermediary within 180 days of the date of the intermediary's notice of program reimbursement. The intermediary makes a recommendation on the provider's request to CMS [formerly HCFA] which makes the decision. CMS responds within 180 days from the date CMS receives the request from the Intermediary. The intermediary notifies the provider of CMS' decision....

Consistent with the regulation, §§2531 and 2533 of the PRM set forth the instructions and documentation requirements for providers seeking exemptions from the SNF routine cost limits.

In this case, CMS denied the Provider's request for a "new provider" exemption to the RCLs for SNFs. Specifically, CMS determined that the Provider failed to submit the required documentation in response to CMS' request, i.e., a complete list of the "medical services" provided during the respite care program. However, the Board found that the Provider had already submitted sufficient documentation to determine that the Provider had not operated as a SNF or its equivalent.

Viewing the record as whole, the Administrator finds that under the narrow circumstances in this case, the Provider met the completeness requirement. The Administrator also finds that the record does indicate that the Provider included a listing of the Provider's medical services as part of its documentation. In response to CMS' request, the Provider completed the "SNF Exemption Request Information Needs" form found at §2533 of the PRM. The Administrator notes that the Provider filled in a response to every question on the form. In addition, as required, the Provider included a list of the skilled/medical services it performed and the dates of first performance.[4] The Provider also submitted other documents describing the respite care program as a form of furnishing relief to in-home caregivers, on two weekends per month, by furnishing housing and limited care to the guests.[5] Thus, the Administrator finds that the Provider met the documentation requirements to enable CMS to make a determination on the merits of the Provider's request.

Turning to the remaining issue in this case, the record reflects that the Board erroneously took the place of CMS as the decision-maker on the merits, and ruled that the Provider's documentation warranted a new provider exemption. However, since CMS had not rendered a final determination on the merits of the Provider's request, the Board was without authority to rule on such matters. Thus, the Administrator hereby vacates the Board's decision on the merits of the Provider's request for an exemption to the RCLs for SNFs as a new provider, and remands this case to CMS for a determination on the merits of the request.

Accordingly, the Administrator orders:

THAT the decision of the Provider Reimbursement Review Board as to the merits of the Provider's RCL exemption request be vacated;

THAT this case is remanded to CMS for a determination on the Provider's application for an exemption to the SNF RCLs based on the entire record which was before the Board and the Administrator;

THAT CMS is to render a determination taking into consideration the Court's holding in *St. Elizabeth's Med. Ctr. of Boston v. Thompson*, 396 F.3d 1228 (D.C. Cir. 2005).

THAT a CMS decision on the Provider's exemption request will be rendered as expeditiously as possible; and

---

[4] Intermediary Exhibit No. I-1.
[5] Id.

THAT a CMS decision on the Provider's exemption request will follow the provisions of 42 CFR 413.30(c).

Date: 10/3/05

Leslie V. Norwalk, Esq.
Deputy Administrator
Centers for Medicare & Medicaid Services